No. 19,504.

IRA L. MAROTTE *v.* STATE COMPENSATION INSURANCE FUND, ET AL.

(357 P. [2d] 915)

Decided December 19, 1960. Rehearing denied January 9, 1961.

Mr. L. F. BUTLER, for plaintiff in error.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, Mr. FRED B. DUDLEY, for defendants in error State Compensation Insurance Fund and the City and County of Denver Police Department.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

IRA L. MAROTTE, age 45 at the time in question, hereafter referred to as "claimant," is a police officer of the City and County of Denver. He claimed workmen's compensation benefits for a disabling heart condition which he alleged arose out of and during the course of his employment as a police officer. His claim was denied by the Commission, affirmed on review in the district court, and he brings error.

The occurrences which claimant alleges caused his undue exertion were as follows: (1) that previous to this event his health had been good and he had been a police officer for 13 years; (2) while performing his duties as a traffic officer on September 2, 1958, he was involved in a minor automobile accident and was "shook

up" and thereafter he felt "bad." At the hearing before the referee claimant could not remember whether his chest had hit the steering wheel, nevertheless earlier he had told a doctor he had done so and that it was after this that he "had headaches," "seemed very short-winded, short of breath." At the time of the car accident claimant did not consult a doctor. (3) On September 3, 1958, claimant returned to work and performed routine duties. On September 4, 1958, although not feeling well, he again reported for work. While on duty that day he was sent on an official call to kill a snake. He received the call at 1:05 p.m. and went to a Denver address where a group of excited women were gathered. They described "a very huge snake and I went searching and finally found it and found a club and chased it around a bit but it was actually a small garter snake about two feet long; I killed it." He testified there was no unusual exertion used in killing the snake. He then went to the police pistol range to practice and following this about 3 p.m. on September 4th, suffered a heart attack while driving on official business. He immediately sought treatment at Denver General Hospital. We note his testimony that neither the car accident nor snake incident were mentioned at his first interview with his doctor as he did not then deem them important.

On September 8th claimant saw his own doctor who diagnosed his difficulty as a myocardial infarction. Claimant contends that as a result thereof he could not perform his normal police duties for a period of time and though working full time now, is restricted to easy types of work. His claim is a result thereof.

The employer's insurance carrier denied liability. At the hearing before the referee the issues were: whether "claimant suffered an accident arising out of the course of his employment"; whether "claimant's condition resulted from said accident"; the "period of temporary total and temporary partial disability"; the "degree of permanent disability"; and his "wage history."

Claimant's evidence was as above recited except for the medical testimony hereinafter referred to. Respondents failed to introduce any evidence rebutting the occurrences alleged and failed to introduce medical evidence to rebut claimant's medical evidence.

At the hearing before the referee claimant introduced testimony of Dr. Edwin W. Peterson, a qualified internist whose practice included "the treatment and field of the heart." He testified on direct examination that claimant's "chest had hit the steering wheel of the car he was driving, quite forcibly and it was thereafter that he noted dull chest pain and shortness of breath."

Based upon this history, including the car accident and snake killing episode, and his examination of claimant, Dr. Peterson stated his opinion to be "that it is probable this (there) was a causative relationship between these two episodes and the development of the myocardial infarction."

He then testified that the contusion had a direct relation to the subsequent condition and that the snake episode "was an aggravation." He further testified that the permanent disability would be between ten and fifteen per cent "as a total working unit."

On cross examination Dr. Peterson agreed his diagnosis was based upon the supposed contusion of September 2nd, but stated that if there had been no blow (as claimant testified he could not remember) that nevertheless there could be a connection "from the emotional aspect of it (i.e. the accident), but not physically." * * * "I mean the emotional upset that must accompany any auto accident, with increase in pulse rate, and blood pressure, and so on."

From the record we can sum up the medical testimony as being that:

1. Myocardial infarctions can occur any time, even while at rest, and do not necessarily arise from trauma, but can so arise, as well as from emotional strain.

2. That Dr. Peterson's opinion was that even if there

were no blow here that the emotional strain of the accident on September 2nd precipitated this attack and the snake episode "aggravated" it.

3. That there was a causal relationship and the degree of disability indicated.

■ In *Industrial Commission v. Havens* (1957), 136 Colo. 111, 314 P. (2d) 698, we held that where the facts are undisputed the entire question is one of law for the courts and that we are not bound by either the referee's or the Industrial Commission's conclusions of law in such cases. This is such a situation.

■ We further there held that in the absence of evidence to rebut a prima facie showing that the heart attack had occurred while employed that it must be held that the claimant was entitled to compensation.

■ The facts here are not only similar to *Havens* where important, but in addition there is competent unrebutted medical testimony to the effect that this particular injury was the result of the two episodes in question. Under the state of facts disclosed, it is not enough to show by way of rebuttal that such attacks may occur while a person is at rest; that is not sufficient conflicting evidence to sustain the finding objected to.

The judgment is reversed and the cause remanded with directions to refer the matter back to the Commission with instructions to enter an award in accordance with the medical testimony.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.